# Exhibit 68

STRICTLY CONFIDENTIAL

MUTUAL NON-DISCLOSURE AGREEMENT

This Mutual Non-Disclosure Agreement is made and entered into as of this 12th day of April, 2022, by and between Fanatics SPV, LLC, a Delaware limited liability company ("Fanatics") and Panini America, Inc., a Delaware corporation ("Panini" and, together with Fanatics, the "Parties" and each a "Party").

Each Party has requested certain information regarding the other Party and its direct and indirect parent and affiliated companies and subsidiaries in connection with a possible negotiated transaction between the Parties or their affiliates (the "Transaction"). Each Party, in its capacity as a Party disclosing information, is referred herein to as "Discloser," and, in its capacity as a Party receiving disclosure of information, is referred to herein as "Recipient." In consideration of Discloser furnishing Recipient information, the Parties have entered into this agreement (this "Agreement") and agree as follows:

1.      Confidentiality.

(a)     Recipient agrees to keep, and to cause its Representatives (as hereinafter defined) who receive Confidential Information (as hereinafter defined) from Discloser or its Representatives to keep, confidential, and to use only for the purpose of evaluating a possible Transaction, all Confidential Information. The term "Confidential Information" as used herein shall mean (i) any and all information, data, documents, agreements, files and other materials that are furnished to Recipient by or on behalf of Discloser, whether furnished before, on or after the date of this Agreement, regardless of the manner or medium in which furnished (whether oral, written, visual, electronic or in any other manner or medium), including, without limitation, the following: (A) all information and documentation that Discloser is obligated to treat as confidential pursuant to any course of dealing or any agreement to which it is a party or by which it is bound; (B) all information and documentation relating to Discloser's proprietary products and technologies, know-how, trade secrets, discoveries, inventions, patents, trademarks, service marks, and other forms of intellectual property, analyses, and compilations; (C) all financial, tax and accounting information and documentation relating to Discloser; and (D) all information and documentation relating to Discloser's business operations and structure, actual or potential business partners or investors, marketing practices and techniques, business strategies and capabilities, acquisition plans, business plans, marketing plans, existing or proposed products or services, and relationships with customers, suppliers, principals, employees and others; (ii) any copies, extracts, reproductions or summaries of such information or documentation; (iii) any notes, analyses, compilations, studies, forecasts, or other documents or reports prepared by or for Recipient that contain such information or documentation, whether prepared by Recipient, its Representatives or others; and (iv) the existence of this Agreement, the terms hereof and fact that any investigations, discussions or negotiations are taking place concerning a Transaction. Notwithstanding the foregoing, (x) Confidential Information may be disclosed to those of Recipient's affiliates and the officers, directors, employees, direct and indirect controlling persons, agents, advisors, accountants, counsel or consultants of Recipient and of its affiliates, or (with respect to Fanatics) potential or actual debt financing sources of Fanatics and of its affiliates or any current lender to Fanatics or an affiliate of Fanatics (provided that Fanatics shall provide prior notice of the identity of such debt financing sources to Panini) (such persons in their capacity as such being generally referred to herein as "Representatives"), in each case who

need to know such information for the purposes of evaluating the Transaction so long as such Representatives are informed of the confidential nature of the Confidential Information and the terms and conditions of this Agreement and are directed to be bound by the terms and conditions of this Agreement as if a party hereto, and (y) Confidential Information may otherwise be disclosed by Recipient or its Representatives to the extent consented to in writing by Discloser or pursuant to Section 1(b).  "Confidential Information" as used in this Agreement does not include information that (A) was or becomes available to Recipient on a non-confidential basis from a source other than Discloser or its Representatives, provided such other source is not known by Recipient to be prohibited from disclosing such information pursuant to a contractual, legal or fiduciary obligation to Discloser, (B) was or becomes generally available to the public (other than as a result of a breach of this Agreement), or (C) was or is independently developed or arrived to by Recipient or its Representatives without reference to or reliance upon the Confidential Information and without violation of any obligation under this Agreement. "Representatives" as used in this Agreement shall also include potential or actual equity financing sources as to which Fanatics has received the prior written consent of Panini to treat as a Representative pursuant to this Agreement (such consent not to be unreasonably withheld or delayed).

(b)     In the event that Recipient or any of its Representatives (i) become required or compelled by judicial or administrative order, including those of a self-regulating organization, or requested or required by any oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process of any tribunal or (ii) is required by applicable law, rule or regulation (including any stock exchange or self-regulatory organization rules) to disclose any Confidential Information, Recipient or its Representatives may disclose such information without liability hereunder; _provided_, that prior to making any such disclosure, Recipient shall provide Discloser with, to the extent legally permissible, prompt and prior notice of such requirement(s) and, in advance of any such disclosure, a list of any Confidential Information Recipient intends to disclose (and, if applicable, the text of the disclosure language itself) so that Discloser may seek a protective order or other appropriate remedy. Recipient will cooperate with Discloser, at Discloser's sole cost and expense, to the extent Discloser seeks to limit such disclosure. If such protective order or other remedy is not obtained, Recipient will furnish only that portion of the Confidential Information which Recipient is advised by counsel that it is required to disclose, and Recipient will exercise commercially reasonable efforts to obtain reasonable assurance that confidential treatment will be accorded the Confidential Information so furnished.

(c)     Upon the written request of Discloser, Recipient will (and will cause its Representatives to) promptly return to Discloser or destroy all copies of the Confidential Information, including material containing Confidential Information, without retaining any copy thereof, including, to the extent practicable, expunging all such Confidential Information from any computer, word processor or other device containing such information; _provided_, that Recipient and its Representatives (i) may retain, in a secure location, copies of Confidential Information for their files as required by their respective bona fide record retention policies to comply with legal and/or regulatory requirements and (ii) shall not be required to return or destroy any electronic copy of Confidential Information created pursuant to their standard bona fide electronic backup and automatic archival procedures; _provided_ that Recipient and its Representatives shall continue to be bound by the terms of this Agreement as if it were in full

force and effect with respect to any such Confidential Information for so long as Recipient or its applicable Representatives retain such Confidential Information.  If requested by Discloser, an appropriate officer of Recipient that has been directed to return or destroy the Confidential Information of Discloser will certify that all such material has been so delivered or destroyed in accordance with this Section 1(c).  Any and all duties and obligations existing under this Agreement shall remain in full force and effect, notwithstanding the return, destruction or retention of the Confidential Information in accordance with this Section 1(c).

2. Ownership of Confidential Information.  The Confidential Information shall remain the property of Discloser.  Except as expressly provided in this Agreement, no rights to use, license or otherwise exploit the Confidential Information are granted to Recipient or its Representatives, by implication or otherwise.  Except as expressly provided in this Agreement, Recipient will not, by virtue of disclosure to it of the Confidential Information or the use of the Confidential Information, acquire any rights with respect thereto, all of which rights shall remain exclusively with Discloser.

3. Privileged Information.  To the extent that Confidential Information includes material subject to the attorney-client privilege, work product doctrine or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters and it is their desire, intention and mutual understanding that the sharing of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege.  All Confidential Information that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege, whether or not marked or identified as such, shall remain entitled to such protection.  Nothing in this letter agreement obligates a Party to reveal material subject to the attorney-client privilege, work product doctrine or other applicable privilege.

4. No Representations or Warranties.  The Parties understand and agree that neither Discloser nor any of its Representatives make any representation or warranty, express or implied, on which Recipient or its Representatives may rely, as to the accuracy or completeness of the Confidential Information and that only those representations and warranties made in writing in a subsequent definitive agreement related to a Transaction, if any, shall have any legal effect. The Parties agree that other than as may be set forth in such definitive agreement neither Discloser nor its Representatives shall have any liability whatsoever to Recipient or any of its Representatives, including, without limitation, in contract, tort or under federal or state securities laws, relating to or resulting from the Confidential Information or any errors therein or omissions therefrom.

5. No Obligation.  It is understood and agreed that unless and until a definitive agreement between the Parties with respect to a Transaction has been executed and delivered, if any, neither Party intends to be, nor shall either Party be, under any legal obligation of any kind whatsoever with respect to a Transaction or otherwise, by virtue of any written or oral expressions by the Party or its Representatives with respect to a Transaction, except for the matters specifically agreed to in this Agreement.

6. <u>Injunctive and Other Equitable Relief</u>.  Discloser, without prejudice to any rights to any other judicial relief it may otherwise have, shall be entitled to equitable relief, including injunction and/or specific performance, in the event of a breach of the provisions of this Agreement.  Recipient agrees that it will not oppose the granting of such relief on the basis that Discloser has an adequate remedy at law, and will pay any fees incurred in enforcing this Agreement.  Recipient also agrees that it will not seek and hereby waive any requirement for the securing or posting of a bond in connection with seeking or obtaining injunctive or other equitable relief. Recipient acknowledges that the Confidential Information is valuable and unique and that any disclosure thereof in breach of this Agreement will result in irreparable injury to Discloser for which damages would not be an adequate remedy. In the event of any litigation relating to this Agreement, Discloser may recover from Recipient, in addition to relief granted, all reasonable costs and expenses (including without limitation reasonable legal fees and expenses) incurred by Discloser in connection with all such litigation, including without limitation any appeal therefrom.

7. <u>Miscellaneous</u>.

(a) Except as otherwise expressly provided herein, each Party's obligations under this Agreement shall expire 18 months after the date of this Agreement.

(b) Each Party hereby represents and warrants that it has due power and authority to execute and deliver this Agreement, and that it is not bound by the terms of a confidentiality agreement or other agreement with a third party that would conflict with any of its obligations under this Agreement.  Each Party hereby represents and warrants that it is not acting as a broker for or representative of any other person and is considering the Transaction only on its own behalf.

(c) The term "<u>person</u>" as used in this Agreement shall be broadly interpreted to include, without limitation, the media and any corporation, company, group, partnership, trust, governmental entity or individual.  The term "<u>affiliate</u>" as used in this Agreement shall have the meaning ascribed to such term in Rule 12b-2 of the General Rules and Regulations under the Securities Exchange Act of 1934, as amended.

(d) It is agreed that no failure or delay by a Party in exercising any right, remedy, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, remedy, power or privilege hereunder.

(e) It is understood and agreed that if any provision contained in this Agreement or the application thereof to a Party, or any other person or circumstance shall be invalid, illegal or unenforceable in any respect under any applicable law as determined by a court of competent jurisdiction, the validity, legality and enforceability of the remaining provisions contained in this Agreement, or the application of such provision to such persons or circumstances other than those as to which it has been held invalid or unenforceable, shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby.  In the case of any such invalidity, illegality or unenforceability, such invalid, illegal or unenforceable provision shall be

deemed deleted herefrom to the minimum extent necessary to cure such invalidity, illegality or unenforceability.

(f) This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Delaware, without regard to any conflict of laws principles.  Any court action or proceeding arising out of or relating to the subject matter of this Agreement shall be brought only in the federal or state courts located in the borough of Manhattan, New York.  Each Party agrees and submits to the exclusive jurisdiction of these courts for any such action or proceeding and each Party agrees not to commence any such action or proceeding in any other court or forum.  Each Party further acknowledges and agrees that the federal or state courts located in the borough of Manhattan, New York, are and would be convenient forums and irrevocably and unconditionally waives any objection to the laying of venue of an action or proceeding in such courts, and, further, irrevocably and unconditionally waives, and agrees not to plead or claim in any such court, that the action or proceeding has been brought in an inconvenient forum or should be transferred.  EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN CONNECTION WITH ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

(g) Each of the Parties hereto agrees that a final judgment in any lawsuit, action or other proceeding arising out of or relating to this Agreement brought in the courts referred to in the first sentence of Section 7(f) shall be conclusive and binding upon each of the Parties hereto and may be enforced in any other courts to the jurisdiction of which each of the Parties is or may be subject, by suit upon such judgment.

(h) Any notice hereunder shall be made in writing by overnight courier, personal delivery, facsimile or email (if telephonically confirmed), in each case to:

If to Fanatics:

Fanatics SPV, LLC
205 Hudson Street, 5th Floor
New York, NY 10013
Attention: Shiri Ben-Yishai
Email: sbenyishai@fanatics.com with a copy to
legalnotices@fanatics.com


With a copy (which shall not constitute notice) to

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
Attention: Andrew J. Nussbaum and Gregory E. Ostling
Telephone: (212) 403-1000
Email: AJNussbaum@wlrk.com; GEOstling@wlrk.com

If to Panini:

Panini America, Inc.
Panini be Viale Emilio Po, 380 - 41126 Modena, Italia
Attention: Mr. Aldo Hugo Sallustro
Telephone: (+39) 059382111
Email: aldosallustro@panini.it

With a copy (which shall not constitute notice) to:

Anna Baroni and Francesca Baroni
Email: annabaroni@studioragbaroni.com;
francescabaroni@studioragbaroni.com

and

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Attention: Richard G. Parker; Adam J. Di Vincenzo
Telephone: (202) 955-8503; (202) 887-3704
Email: RParker@gibsondunn.com;
ADiVincenzo@gibsondunn.com

(i)     This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns.  Neither Party may assign or otherwise transfer this Agreement, or any of its rights or obligations hereunder, to any third party (whether by contract, operation of law or otherwise), without the prior written consent of the other Party, and any attempt to do so without the prior written consent of the other Party shall be void.

(j)     This Agreement may only be amended by a separate writing signed by both Parties expressly so amending this Agreement. Any provision of this Agreement may be waived by the Party entitled to the benefit thereof, if in writing and signed by the Party entitled to the benefit thereof.

(k)     This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same Agreement. One of more counterparts of this Agreement may be delivered in PDF format by email, with the intention that they shall have the same effect as an original counterpart thereof.

[Signatures on next page]

If you are in agreement with the foregoing, please so indicate by signing and returning one copy of this Agreement, whereupon this Agreement will constitute our agreement with respect to the subject matter hereof.

FANATICS SPV, LLC

By: *[signature]*
Name: Gary Gertzog
Title: President Business Affairs

PANINI AMERICA, INC.

By: _____
Name:
Title:

*[Signature Page to the Mutual Non-Disclosure Agreement]*

If you are in agreement with the foregoing, please so indicate by signing and returning one copy of this Agreement, whereupon this Agreement will constitute our agreement with respect to the subject matter hereof.

FANATICS SPV, LLC

By:_____
Name:
Title:

PANINI AMERICA, INC.

By: *[signature]*
Name: ALDO H. SALLUSTRO
Title: CEO PANINI GROUP

[*Signature Page to the Mutual Non-Disclosure Agreement*]