UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| PANINI AMERICA, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>FANATICS SPV, LLC, et al.<br><br>*Defendants.* | **Case No. 8:23-CV-1721-KKM-AEP** |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER TO THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

Despite representing that "key events giving rise to this dispute took place in Florida," Opp'n 3, Panini's opposition identifies no such facts or witnesses here. That is because this case has no connection to the Middle District of Florida. Neither Panini's diversionary attempts to malign Fanatics' credibility, nor the close to 70 internet "reports," scattered newspaper articles, or outdated SEC filings it submitted as exhibits, can change this reality. Instead, they simply confirm that Panini has nothing to say in response to Fanatics' main arguments. Indeed, Panini all but acknowledged that New York is the appropriate forum for disputes related to the licenses that are at the heart of its complaint when it reportedly initiated an arbitration in New York *last week* against the NFL Players Association ("NFLPA") related to Panini's trading card license. Respectfully, this Court should grant Fanatics' motion.

***Panini fails to rebut the fact that Fanatics Collectibles is based in New York.*** Panini devotes the bulk of its opposition to attempting to establish that *Fanatics Holdings* was

based in Florida in 2021. Opp'n 9. That argument is a red herring. This case is about Fanatics' trading card business—*Fanatics Collectibles*—which was never headquartered in Florida. There is no allegation that license negotiations were connected to the location of parent company Fanatics Holdings, which Panini erroneously alleges to be in Florida. They were not. Instead, New York is where the actual negotiating parties—the leagues, players associations, and Fanatics' trading card business—were primarily operating and headquartered. Mot. 4, 5, 15. Panini does not seriously dispute these critical connections to New York, which are "more relevant" than formal corporate location anyway.[1] *McGovern v. Burrus*, 407 F. Supp. 2d 26, 28 (D.D.C. 2005).

Given the irrelevance of Fanatics Holdings to this dispute, Panini's assertion that Fanatics presented "flatly inconsistent" accounts of where Fanatics Holdings was headquartered in 2021 is meaningless. Opp'n 7. Panini's assertion is also incorrect. The statement that Fanatics Holdings "has never been *headquartered* in Florida," is accurate, and does not conflict with a 2021 SEC Form D listing Fanatics Holdings'

---

[1] Panini cannot dispute that Fanatics Collectibles' *actual* headquarters is, and has been, in New York, so it instead dredges up webpages that state otherwise. Opp'n 6, 12-13. The first is a screenshot of Fanatics' global office webpage which *does* list "New York, NY" as both the "Fanatics Collectibles Headquarters" and the "Fanatics Inc. Holdings Headquarters," but Panini's exhibit cuts-out that language. *Compare* Buterman Decl. Ex. 6, ECF 25-6, *with* Hilborn Decl. Ex. 64, ECF 50-64. Panini instead focuses on a pop-up, that appears only if the viewer clicks a pin in California, and says "Collectibles HQ." Hilborn Decl. Ex. 64. While Fanatics Collectibles does have an office location in Los Angeles, that is not the headquarters. That web pop-up is a technical error that Fanatics intends to correct and which cannot change the actual fact that Fanatics Collectibles' headquarters is in New York, as the webpage's more prominent text makes clear. *Farrior v. George Weston Bakeries*, 2009 WL 113774, at *7 n.5 (E.D.N.Y. Jan. 15, 2009) (finding that a "passing reference in the documents" to a "principal place of business is grossly insufficient, in light of the complete absence of any other allegation linking the operative events" to plaintiffs' chosen forum). Panini also relies on some "Westlaw Company Investigator Reports," Opp'n 6, which have been discredited as unreliable and not properly subject to judicial notice. *See Fazaei v. Macy's Inc.*, 2020 WL 9457055, at *1 (N.D. Cal. Mar. 16, 2020).

"principal place of business" as Jacksonville, Florida. *Id.* at 7-8; Hilborn Ex. 44, ECF 50-44. Headquarters and principal place of business are two separate things. "While a corporation's headquarters will often be its principal place of business," as a matter of law, "that is not always the case." *McInnes v. S. Poverty L. Ctr.*, 2021 WL 4155785, at *1 (M.D. Ala. 2021) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010)); *see also Capps v. Teva Pharms. USA*, 2021 WL 1164818, at *2 (M.D. Fla. 2021). As the Supreme Court explained, "in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations." *Hertz*, 559 U.S. at 95. The hyper-technical conflict Panini attempts to manufacture also fails because, by 2022, the Form D listed New York as Fanatics Holdings' principal place of business too. Yates Decl. Ex. 1.[2] New York is where the relevant conduct largely occurred and where this case belongs. *See Rindfleisch v. Gentiva Health Sys.*, 752 F. Supp. 2d 246, 257 (E.D.N.Y. 2010) ("the mere fact that Gentiva listed its Melville address on certain forms does not make this District convenient").

***Panini does not identify any operative facts connected to this District***. Panini alleges that a "substantial part of the events giving rise to Panini's claims occurred" here,

---

[2] Although Panini claims to be confused by the fact that Fanatics, Inc. is no longer a legal entity within the Fanatics business structure, Panini admits that the "exact status of Fanatics, Inc. is irrelevant." Opp'n 6. Panini's footnote request for a deposition of Fanatics' declarant to ask questions about these two invented "conflicts" is, thus, a clear delay tactic and wholly improper. Opp'n 3 n.4. It is exceedingly common for a business to colloquially use a trade name or "d/b/a". And there is no conflict with, years ago, having a different "principal place of business" and "headquarters" for a holding company. But just as importantly, no deposition testimony about those issues would be at all relevant to the locus of events giving rise to this lawsuit. *See Farrior*, 2009 WL 113774, at *5 (transferring where "[e]ven though the documents listed Bay Shore as the defendants' principal place of business . . . there is still no evidence that any of the operative facts occurred in this District and no evidence that any relevant witnesses whatsoever are in this District").

Compl. ¶ 14, and yet its opposition does not cite a single fact in support. Panini deflects from its omission by noting that Fanatics' merchandise business (Fanatics LLC or Commerce) sold jerseys from Florida to Panini in June and July 2023 and attaches invoices to prove the sales. Opp'n 9-10; Hilborn Decl. Ex. 45, ECF 50-45. So what? Panini does not allege the jersey sales were anticompetitive. It alleges that Fanatics' Michael Rubin allegedly "approached Panini in May 2023 to threaten" to cut off its jersey supply. Compl. ¶¶ 119-20. Apart from the oddity of highlighting that Panini continued to get jerseys from Fanatics after this supposed threat, the jersey sales are not a "substantial part" of this case. Panini's 190-paragraph complaint dedicates just two paragraphs to them, *id.*, which is consistent with the fact they are unrelated to the licenses at the "crux" of Panini's case, Opp'n 1.[3] Invoices showing continued jersey sales are not enough to keep in Florida this case about licensing practices.

***Panini does not seriously dispute that New York is more convenient***. Panini does not identify (1) a single witness who would find Florida more convenient than New York or (2) a single non-party witness that is within this Court's subpoena power and thus could be compelled to testify at any trial here. Panini knows that the NFL, MLB, NBA, and nearly all of the players associations are based in New York, and it does not dispute that their contracts specify New York as the venue for dispute resolution. In fact, Panini initiated a proceeding against the NFLPA just last week—***in New York***.[4]

---

[3] Panini spends far more complaint space on Fanatics' acquisition of Topps and investment in GCP, Compl. ¶¶ 74-96, 154-64, which Panini does not dispute were deals negotiated primarily in New York (for Topps), and from Washington, D.C., New York, and Texas (for GCP). Winiarski Decl. ¶ 10, 13.
[4] Yates Decl. Exs. 2, 3. Panini does not dispute its licenses require New York forums. Mot. 5, 10 n.8.

The fact that Panini's retort is that Fanatics can try its case with deposition testimony, Opp'n 14, confirms that Florida is the wrong forum. *See* Mot. 13 (citing cases).[5]

***Panini cannot deny that it has agreed that New York is where licensing disputes should be adjudicated***. Panini concedes that it entered into an agreement with Fanatics, still in effect, that mandates New York as the forum for all "disputes related to the 'subject matter' of the NDA." Opp'n 15 & n.12. Panini's rebuttal that the "subject matter" of the NDA does not apply here because Panini's licenses are not "specifically referenced in the agreement," Opp'n 15, is an artificial and implausible interpretation of the NDA and the complaint. The NDA expressly cites a "possible negotiated transaction," which was a deal "to allow Fanatics Collectibles to assume the remaining terms of the 'existing [licensing] contracts'" that Panini now claims Fanatics has tortiously interfered with." *See* Mot. 7-8. Panini cannot and does not dispute that. By challenging the circumstances of Panini's potential exit from those licenses, and seeking to hold Fanatics liable for that possibility, *see* Compl. ¶¶ 7, 112-16, 169-80, Panini put at issue the terms, conditions, and circumstances of the parties' discussions covered by the NDA's "subject matter." That makes New York the required forum to adjudicate this dispute over licensing agreements. Again, it is telling that just last week Panini voluntarily chose to initiate an arbitration against the NFLPA *in New York*

---

[5] Panini does not even attempt to argue it has any connection to this forum. Opp'n 8. And its own citation confirms its lack of connection means "less deference is required, and 'it is considerably easier to satisfy the burden of showing that other considerations make transfer proper.'" *Ohio Cas. Ins. v. Timber Dev. Corp.*, 2013 WL 12148854, at *3 (M.D. Fla. Jan. 23, 2013) (denying transfer where "operative insurance contracts were issued in Florida" and locus of operative facts was neutral).

5

based on the same conduct that lies at the heart of this dispute, i.e., a decision by the NFLPA not to continue licensing intellectual property to Panini.

The remainder of Panini's arguments are either repetitive or are adequately addressed in Fanatics' motion. Accordingly, Fanatics respectfully requests that the Court transfer this case to the Southern District of New York.

Dated: September 1, 2023

Respectfully submitted,

William J. Schifino, Jr., Esq.
Florida Bar Number 564338
**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson Street, Suite 1500
Tampa, Florida 33602

Michael G. Tanner, Esq.
Florida Bar Number 261300
**GUNSTER, YOAKLEY & STEWART, P.A.**
1 Independent Drive, Suite 2300
Jacksonville, Florida 32202

Derek L. Shaffer (*pro hac vice*)
Christopher G. Michel (*pro hac vice*)
**QUINN EMANUEL**
1300 I Street NW, 9th Floor
Washington, DC 20005

*Counsel for Defendants*

/s/ Lawrence E. Buterman
Lawrence E. Buterman (*pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1264
lawrence.buterman@lw.com

Amanda P. Reeves (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004

Christopher S. Yates (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Michael B. Carlinsky (*pro hac vice*)
**QUINN EMANUEL**
51 Madison Ave, 22nd Floor
New York, NY 10010

## CERTIFICATE OF SERVICE

I certify that, on September 1, 2023, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will notice all counsel of record.

*/s/ Lawrence E. Buterman*
Lawrence E. Buterman